**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 14-cv-2641-WJM-CBS

EUGENE KNIGHT,
L.K., by and through her next friend Eugene Knight, and
A.K., by and through his next friend Eugene Knight,

      Plaintiffs,

v.

PAULA BIENEMAN, in her official capacity as Principal of Palmer Elementary School,
LEE COOPER, in his official capacity as Deputy Instructional Superintendent of Denver
Public Schools, and
TOM BOASBERG, in his official capacity as the Superintendent of the Denver Public
Schools,

      Defendants.

---

**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS AND DENYING
PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

---

Plaintiff Eugene Knight ("Plaintiff") brings this action on his own behalf, and on

behalf of his children, L.K. and A.K., against Defendants Paula Bieneman, Lee Cooper,

and Tom Boasberg, in their official capacities as employees of the Denver Public School

District (together "Defendants" or "District").  (Am. Compl. (ECF No. 8).)  Plaintiff alleges

that Defendants violated his rights under the United States and Colorado Constitutions by

barring him from entering onto the property of L.K. and A.K.'s public school.  (*Id.*)

Before the Court are the following Motions: (1) Plaintiff's Motion for Preliminary

Injunction (ECF No. 9); and (2) Defendants' Motion to Dismiss (ECF No. 28).  Because

the Court concludes that the Motion to Dismiss should be granted, the Motion for

Preliminary Injunction is denied.

## I.  FACTUAL BACKGROUND

In 2007, Plaintiff Eugene Knight pled guilty to attempted sexual assault on a

child, and was sentenced to 8 years sex offender intensive supervision probation.  (Am.

Compl. ¶ 3.)  One of his conditions of probation was participation in sex offender

treatment, which costs $600 per month.  (*Id.*)  Plaintiff could not afford this fee, had his

probation revoked for failure to participate in treatment, and was sentenced to two years

in the Colorado Department of Corrections.  (*Id.*)  Upon his discharge in 2010, Plaintiff

was again required to participate in sex offender treatment as a condition of his parole.

(*Id.*)  When Plaintiff again could not afford the fee, he was unsuccessfully discharged

from parole.  (*Id.*)  Due to his conviction for a sex offense, Plaintiff is required to register

as a sex offender.  (*Id.* ¶ 10.)

Defendant Paula Bieneman is the Principal of Palmer Elementary, a Denver

Public School, Defendant Lee Cooper is the Deputy Instructional Superintendent of

Denver Public Schools, and Defendant Tom Boasberg is the Superintendent of Denver

Public Schools.  (*Id.* ¶¶ 6-8.)  Denver Public Schools has a policy entitled "KFA Public

Conduct on School Property" (the "Policy") which allows the District to bar from school

grounds any parent who is found to be in violation.  (*Id.* ¶ 9; *see also* ECF No. 28-2h.)

Plaintiff is the father of L.K. and A.K., who both attend elementary school at

Palmer Elementary.  (Am. Compl. ¶¶ 4-5.)  Defendant Bieneman found Plaintiff's sex

offender registration information on the internet.  (*Id.* ¶ 11.)  Bieneman consulted with

Defendant Cooper and determined that Plaintiff's presence on school grounds violated

the Policy because it was causing a "disruption of teaching or administrative operations

and the creation of an unsafe/threatening environment for students and staff members."

(*Id.*)  On September 15, 2014, Plaintiff was served with a letter authorized by Bieneman, which informed him that he would be subject to arrest if he entered the grounds of Palmer Elementary, or any other District school.  (*Id.* ¶ 12; *see also* ECF No. 26-1.)

As a result of this letter, when Plaintiff drops his kids off at school or picks them up from there, he is required to wait on the sidewalk until a paraprofessional escorts them into the school.  (Am. Compl. ¶ 12.)  Plaintiff contends that the assigned paraprofessional is "anything but a professional", and that he or she "forgets to collect L.K. or both children, leaves one or both of them in the [early childhood education] classroom where they are alone and terrified, and 'forgets' to bring them to the sidewalk".  (*Id.* ¶ 13.)  Plaintiff is not permitted to go to the intercom to inquire about his children, and when he calls the office, "the rude and incompetent staff at Palmer Elementary refuse to answer the telephone and/or take Mr. Knight's telephone calls." (*Id.*)  Plaintiff alleges that this experience "is confusing and humiliating to the children", and that the District is treating the children "as if they were little criminals themselves." (*Id.* ¶ 12.)

On these facts, Plaintiff alleges that Defendants have violated both the United States and the Colorado Constitutions.  (Am. Compl. pp. 9-16.)  Plaintiff filed a Motion for Preliminary Injunction seeking a court order requiring the District to allow him onto school property.  (ECF No. 9.)  Defendants have filed a Motion to Dismiss all claims brought in the Amended Complaint.  (ECF No. 28.)  Both Motions are ripe for review, and are discussed below.

## II.  LEGAL STANDARD

Defendants move to dismiss Plaintiff's federal constitutional claims under Federal

Rule of Civil Procedure 12(b)(6), which permits dismissal of a complaint for "failure to state a claim upon which relief can be granted." In evaluating such a motion, a court must "assume the truth of the plaintiff's well-pleaded factual allegations and view them in the light most favorable to the plaintiff." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007). In ruling on such a motion, the dispositive inquiry is "whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Granting a motion to dismiss "is a harsh remedy which must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleading but also to protect the interests of justice." *Dias v. City & Cnty. of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009) (quotation marks omitted). "Thus, 'a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely.'" *Id.* (quoting *Twombly*, 550 U.S. at 556).

### III. ANALYSIS

Plaintiff brings claims under the First and Fourteenth Amendment of the United States Constitution alleging that his right to free association and equal protection were violated when he was excluded from the grounds of Palmer Elementary. (Am. Compl. pp. 9-10.) Plaintiff also alleges that various provisions in the Colorado Constitution were violated. (*Id.* pp. 10-16.) The Court will address each of these claims in turn below.

### A.	Equal Protection

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated

alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 440 (1985) (quoting

*Plyler v. Doe*, 457 U.S. 202, 216 (1982)).

Different levels of scrutiny apply to equal protection claims depending on the right

allegedly infringed and the alleged basis for the disparate treatment.  In cases involving

suspect classes such as race or alienage, or fundamental rights like the right to vote,

the challenged law is subjected to strict scrutiny by the courts and sustained only if the

government can prove that the law is narrowly tailored to serve a compelling state

interest.  *McLaughlin v. Florida*, 379 U.S. 184, 192 (1964).  Falling just short of these

areas requiring strict scrutiny, the Supreme Court has identified certain "quasi-suspect"

classes," such as gender and illegitimacy, which require that restrictions be

"substantially related to an important state interest" to survive scrutiny.  *See Mills v.*

*Habluetzel*, 456 U.S. 91, 99 (1982).

All other rights and classifications that are subject to the Equal Protection Clause

are reviewed pursuant to a "rational-basis" standard, which is the least exacting level of

review.  Unlike the classifications subject to strict or intermediate scrutiny, these laws

are "accorded a strong presumption of validity," *Heller v. Doe*, 509 U.S. 312, 319-20

(1993), and it is the Plaintiff's burden to overcome the presumption and show that the

statute or law in question is not rationally related to a legitimate state interest.  *Teigen v.*

*Renfrow*, 511 F.3d 1072, 1083 (10th Cir. 2007).  In meeting the rational-basis standard,

a legislature or government decision maker is not required to actually articulate, at any

time, the purpose or rationale supporting its classification.  Under the rational basis test,

"[a]n equal protection claim will fail if there is any reasonably conceivable state of facts

that could provide a rational basis for the classification."  *Teigen*, 511 F.3d at 1083

(affirming Rule 12 dismissal of plaintiff's equal protection claim).

The parties in this case agree that neither felons nor sex offender are protected classes, and that the right involved—access to public school grounds—is not fundamental. Thus, there is agreement that the rational basis applies in this case. Plaintiff pursues an equal protection claim under the "class of one" theory. (ECF No. 30 at 10.) Under this theory, Plaintiff must first establish that others "similarly situated in every material respect" were treated differently. *Jicarilla Apache Nation v. Rio Arriba Cnty.*, 440 F.3d 1202, 1210 (10th Cir. 2006). "A plaintiff must then show this difference in treatment was without rational basis, that is, the government action was irrational and abusive, and wholly unrelated to any legitimate state activity." *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1216 (10th Cir. 2011) (internal quotations and citations omitted). This standard is objective—if there is a reasonable justification for the challenged action, the Court should not inquire into the defendant's actual motivations. *Id.*

### 1.    Similarly Situated

Plaintiff must first show that other individuals who were similarly situated in every material respect were treated differently. *Jicarilla Apache Nation*, 440 F.3d at 1210. The "similarly situated" requirement is an "exacting burden". *Id.* at 1213. To be "similarly situated" the individuals "must be *prima facie* identical in all relevant respects or directly comparable in all material respects; although this is not a precise formula, it is nonetheless clear that similarly situated individuals must be very similar indeed." *United States v. Moore*, 543 F.3d 891 (7th Cir. 2008).

Plaintiff bears the burden of showing that he was treated differently than someone who is similarly situated to him. *Renchenski v. Williams*, 622 F.3d 315, 338

(3d Cir. 2010) (affirming dismissal of equal protection claim because the sex offender plaintiff had failed to show that he was similarly situated to non-sex offender inmates). In an attempt to meet this burden, Plaintiff alleges that individuals with prior convictions for homicide, attempted homicide, burglary, aggravated robbery, assault, aggravated child abuse resulting in death, possession of controlled substances with intent to distribute, contributing to the delinquency of a minor, and other felonies are not barred from the District's school campuses. (Am. Compl. ¶ 14.) However, felons convicted of a non-sex offense are not similarly situated to the Plaintiff. *Haines v. Archuleta*, 2013 WL 6658767, *5 (D. Colo. Dec. 17, 2013) (sex offenders are not similarly situated to non-sex offenders because they were not convicted of the same conduct); *see also Murray v. Cowley*, 913 F.2d 832, 833-34 (10th Cir. 1990) (holding that plaintiffs convicted under different statutory provisions are not similarly situated); *Bonin v. Vasquez*, 807 F. Supp. 589, 621 (C.D. Cal. 1992) (holding that an offender convicted of murder is not similarly situated to a sex offender); *Blue v. Harris*, 2008 WL 4186967, *9 (S.D. Fla. Sept. 5, 2008) (convicted sex offender not similarly situated to inmate convicted of a non-sex offense).

Plaintiff has failed to allege that any felon previously convicted of a sex offense against a child is allowed on District property. Thus, the Court finds that Plaintiff has failed to meet his burden of showing that similarly situated individuals are treated differently. However, Defendant admits in its response to the Motion for Preliminary Injunction that "[t]he District has permitted parents on the sex offender registry to access school grounds when a determination was made that there was no risk to students or personnel." (ECF No. 25 at 4.) Although it is Plaintiff's burden to show that he has

7

been treated differently than a similarly situated individual, because the District has admitted that some sex offenders are allowed on District property, the Court will continue to consider whether there is any rational basis for the District's policy.

2.      Rational Basis

An equal protection claim will fail "if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." *Copelin-Brown v. N.M. State Pers. Office*, 399 F.3d 1248, 1255 (10th Cir. 2005).  In the context of a motion to dismiss under Rule 12(b)(6), the Court must accept all of the allegations in the complaint as true and "then considers these 'facts' according to the deferential rational basis standard." *Teigen*, 511 F.3d at 1083.  "To survive a motion to dismiss for failure to state a claim, a plaintiff must allege facts sufficient to overcome the presumption of rationality that applies to government classifications." *Brown v. Zavaras*, 63 F.3d 967, 971-72 (10th Cir. 1995).

Plaintiff admits that there is "nothing facially irrational" about the District's policy that allows it to exclude parents from school grounds upon a finding that he posed some threat to the school.  (ECF No. 30 at 4-5.)  However, Plaintiff contends that application of this policy to him is irrational.  (*Id.* at 5.)  Plaintiff argues that the District acted irrationally in finding that he "poses a 'threat of harm' to children if he is on school district owned or controlled property *merely because he was convicted of an attempted sex offense against a child ten years ago and for no other reason.*"  *(Id.* (emphasis in original).)  Plaintiff points out that his crime was not committed on school grounds, was not against a District employee or student, and occurred when Plaintiff was a teenager. (*Id.*)  Plaintiff argues that the District only excluded him because other parents were

gossiping about his status on the sex offender registry, which prompted the District to act.  (*Id.* at 9.)

The District argues that it banned Plaintiff from entering school property based on his "registration as a sex offender, his conviction for attempted sexual assault on a child (particularly when he is attempting to access an elementary school), and his failure to complete sex offender treatment."  (ECF No. 28 at 6; *see also* ECF No. 28-1.) The District contends that its decision is justified by its need to "make conservative choices erring on the side of protecting the safety of [the District's] students."  (ECF No. 28 at 6.) The Supreme Court has recognized that "[s]ex offenders are a serious threat in this Nation."  *McKune v. Lile*, 536 U.S. 24, 32 (2002), and nearly every state has enacted "a statute designed to protect its communities from sex offenders and to help apprehend repeat sex offenders."  *Conn. Dep't of Pub. Safety v. Doe*, 538 U.S. 1, 4 (2003).

Courts have routinely upheld restrictions on sex offenders based solely on their listing on the sex offender registry.  For example, sex offenders are routinely banned from living near schools and parks, and courts have held that these restrictions are rationally related to a legitimate public interest.  *See Weems v. Little Rock Police Dep't*, 453 F.3d 1010, 1015 (8th Cir. 2006) (finding that an Arkansas statute prohibiting sex offenders from living within 2,000 feet of a school or daycare center advances legitimate interest in protecting children from sex offenders); *Graham v. Henry*, 2006 WL 2645130, at *7 (N.D. Okla. Sept. 14, 2006) (finding that Oklahoma's ban on sex offenders living within 2,000 feet of a school was rationally related to a legitimate state interest); *Doe v. Baker*, 2006 WL 905368, at *7 (N.D. Ga. April 5, 2006) (determining Georgia law prohibiting registered sex offenders from residing within 1000 feet of a child care facility

was "rationally related to the legitimate government interest of protecting children").

Furthermore, many states have provisions that bar certain sex offenders from being on

or near school grounds while students are present.  *See Virginia v. Doe*, 682 S.E.2d

906, 910 (Va. 2009) (upholding Virginia's sex offender registration statute that forbids

certain categories of sex offenders from entering school grounds while students are

present); *Does 1-4 v. Snyder*, 932 F. Supp. 2d 803, (E.D. Mich. 2013) (discussing

Michigan's ban on allowing sex offenders from "working, residing, or loitering" within

1,000 feet of a school).

The Court acknowledges that recent studies have shown that some of the

concerns over the recidivism of sex offenders may be overblown.  *See Wallace v. New*

*York*, 2014 WL 4243564, at *32 (E.D.N.Y. Aug. 28, 2014) (discussing "[c]redible data,

suggesting that 'concerns' over the recidivism risk among convicted sex offenders might

be misplaced or overstated.").  However, these studies do not undermine the rational

connection between the goal of protecting children and restricting sex offenders' access

to school campuses.  To survive Defendants' Motion to Dismiss, Plaintiff must show that

there is no rational basis that could possibly justify the District's actions in this case.

*Copelin-Brown*, 399 F.3d at 1255.  Given his status on the sex offender registry, and

particularly because Plaintiff's sex offense involved a child, the Court finds that the

District's exclusion of Plaintiff from school grounds is rationally related to its interest in

protecting the safety of its students.  As such, the Court grants Defendants' Motion to

Dismiss Plaintiff's claim under the Equal Protection Clause, and this claims are

dismissed with prejudice.[1]

## B.    Free Association / Familial Association

Plaintiff also brings a claim for violation of his "right to free association" under the

First and Fourteenth Amendment.  (Am. Compl. ¶ 19.)  Plaintiff's response to the Motion

to Dismiss fails to mention "free association"; rather, Plaintiff repeatedly discusses his

right to familial association, arguing that the District has interfered with his right to

parent his children because he is not allowed to enter school grounds.  (*Id.* ¶¶ 10-17;

ECF No. 30 at 4.)  As such, the Court construes this claim as alleging that the

Defendants have unlawfully interfered with his relationship with his children.

The Supreme Court on numerous occasions has made clear that "the interest of

parents in the care, custody, and control of their children . . . is perhaps the oldest of the

fundamental liberty interests recognized."  *Troxel v. Granville*, 530 U.S. 57, 65 (2000);

*see also Lassiter v. Dep't Soc. Servs.*, 452 U.S. 18, 27 (1981) ("[A] parent's desire for

and right to 'the companionship, care, custody and management of his or her children'

is an important interest that 'undeniably warrants deference and, absent a powerful

countervailing interest, protection.'") (quoting *Stanley v. Illinois*, 405 U.S. 645, 651

(1972)).  Despite recognizing this abstract liberty interest in familial integrity and

association, "the Supreme Court has yet to articulate the parameters of this right."

---

[1] The Court has carefully considered whether Plaintiff could possibly allege facts that would permit him to state an Equal Protection claim upon which relief could be granted. However, the Court finds that amendment would be futile, and therefore dismissal with prejudice is appropriate.  *See Oxendine v. Kaplan*, 241 F.2d 1272, 1275 (10th Cir. 2001) ("dismissal [with prejudice] of a . . . complaint for failure to state a claim is proper only where it is obvious that the plaintiff cannot prevail on the facts he has alleged and it would be futile to give him an opportunity to amend.").

*Kottmyer v. Maas*, 436 F.3d 684, 690 (6th Cir. 2006).

In *United States v. Bear*, 436 F.3d 1221, 1229 (10th Cir. 2014), the Tenth Circuit struck down Oklahoma's practice of disallowing offenders on supervised release from having any contact with their own minor children.  The *Bear* court held that "a father has a fundamental liberty interest in maintaining his familial relationship with his children" and that conditions which interfere with this relationship can only be imposed in "compelling circumstances" and must "be especially fine-tuned to achieve the stautory purposes of sentencing."  *Id.* (internal quotations and citations omitted).  Ultimately, a 2001 conviction for a sex offense was "too remote in time, standing alone, to provide compelling evidence justifying infringement upon Mr. Bear's right of familial association." *Id.*

In reliance on *Bear*, Plaintiff argues that the District should not be able to exclude him from school grounds because it cannot show that he poses any danger based solely on his ten year old conviction for a sex offense.  (ECF No. 30 at 8.)  However, the right interfered with in *Bear*—the right to parent one's child—is not the same right implicated here.  That is, the plaintiff in *Bear* was not permitted to reside in the same location as his minor children or to spend any time alone with them, which patently interferes with his right to care for his own children.  In this case, the District is not barring Plaintiff from caring for, having custody of, spending any time with, or controlling any aspect of his children's lives.  The District does not restrict the amount or quality of Plaintiff's interactions with his children when they are not on school grounds.  As such, the Court concludes that *Bear* is not persuasive.

To defeat the Motion to Dismiss, Plaintiff must show that the District's barring him

from physically escorting his children onto school grounds violates some constitutional right.  The Tenth Circuit has acknowledged that parents have a constitutional right to direct their children's education.  *Swanson v. Guthrie Indep. Sch. Dist. No. I-L*, 135 F.3d 694, 699 (10th Cir. 1998).  For example, courts have held that parents have a right to send their children to private school, whether that school is religious or secular.  *Id.* (citing *Pierce v. Soc'y of Sisters*, 268 U.S. 510 (1925)).  "Numerous cases, however, have made it clear that this constitutional right is limited in scope."  *Id.*

In this case, Plaintiff is permitted to participate in his children's education.  He is entitled to make decisions regarding his children's education, advocate on their behalf, and may communicate with District staff by e-mail, phone, or letter.  (ECF No. 30 at 7-8.)  The District's actions only prevent Plaintiff from physically entering onto school grounds.  The law is well established that parents have no constitutional right to physically access school grounds.  *See Abegg v. Adams/Arapahoe Sch. Dist. J8*, 2012 WL 7783087, at *5 (D. Colo. Oct. 9, 2012) (collecting cases); *see also Porter v. Duval Cnty. Sch. Bd.*, 406 Fed. App'x 460, 462 (11th Cir. 2010) (affirming dismissal of Due Process claim because parents had failed to show that they had a right to access school grounds); *Lankster v. Williams*, 2012 WL 950096, at *3 (S.D. Ala. Mar. 5, 2012) ("Courts have held that members of the general public have neither a liberty nor property interest in being present on a school campus, and absent such an interest, they are not entitled to the procedural due process protections of the Fourteenth Amendment."); *Ritchie v. Coldwater Comm. Schs.*, 2012 WL 2862037, at *16 (W.D. Mich. July 11, 2012) ("In the context of due process claims, to this Court's knowledge, every court that has considered the issue has concluded that citizens, including parents,

do not have a liberty or property interest in accessing school property."); *Mayberry v. Indep. Sch. Dist. No. 1 of Tulsa Cnty.*, 2008 WL 5070703, at *4 (N.D. Okla. Nov. 21, 2008) ("Many courts have held that parents have no constitutional right to be on school premises.")

Thus, the Court concludes that Plaintiff has failed to allege that Defendant's policy of barring him from physically entering school grounds interferes with any constitutional right.  As such, Plaintiff has failed to state a claim for violation of his rights to free association or familial association.[2]  Accordingly, Defendants' Motion to Dismiss these claims is granted.  Because the Court also concludes that amendment of this claim would be futile, this dismissal is with prejudice.  *See Grosman v. Novell*, 120 F.3d 1112, 1126 (10th Cir. 1997).

## C.  Colorado Constitution Claims

Plaintiff also brings claims under Article VII, Section 10 and Article XX, Section 6 of the Colorado Constitution.  (Am. Compl. pp. 10-15.)  Unlike Plaintiff's other claims, they are not federal claims over which the Court has subject matter jurisdiction based on a federal question; however, the Court has supplemental jurisdiction while the federal claims are pending.  28 U.S.C. § 1367; *Grable & Sons Metal Prods., Inc. v. Darue*, 545 U.S. 308, 312 (2005) (a federal court does not have independent jurisdiction

---

[2] It is unclear whether Plaintiff also attempts to bring a claim for a Due Process violation. However, even if he does so allege, such claim is subject to dismissal because the first element of any Due Process claim is a showing that the plaintiff was deprived of a liberty or property interest, which Plaintiff has failed to do in this case.  *See Elliot v. Martinez*, 675 F.3d 1241, 1244 (10th Cir. 2012).  As such, to the extent Plaintiff attempts to bring a claim alleging that his Due Process rights were violated when the District barred him from entering school grounds, any such claim is dismissed with prejudice.

over state law claims unless those state law claims "turn on substantial questions of federal law").

As set forth above, the Court has found that dismissal of Plaintiff's federal claims is appropriate.  If federal claims are dismissed before trial, leaving only issues of state law, a federal district court should ordinarily decline to exercise supplemental jurisdiction by dismissing the case without prejudice.  *Brooks v. Gaenzle*, 614 F.3d 1213, 1229 (10th Cir. 2010) (citing *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988), *superseded on other grounds by statute*, *Fent v. Okla. Water Res. Bd.*, 235 F.3d 553, 557 (10th Cir. 2000)).  The Court sees no reason to vary from the ordinary course in this case.  Accordingly, the Court declines to exercise its supplemental jurisdiction over Plaintiff's claims brought under the Colorado Constitution, and dismisses such claims without prejudice.

**D.      Plaintiff's Motion for Preliminary Injunction**

Contemporaneous with his Amended Complaint, Plaintiff filed a Motion for Preliminary Injunction seeking a Court order requiring Defendant to allow him on school property.  (ECF No. 9.)  As the Court has concluded that Defendants' Motion to Dismiss should be granted, the Motion for Preliminary Injunction is moot, and can be denied on this basis.

Moreover, one of the required elements for injunctive relief is a showing that a plaintiff is likely to succeed on the merits of his claim.  *See Westar Energy, Inc. v. Lake*, 552 F.3d 1215, 1224 (10th Cir. 2009).  As discussed above, the Court has found that Plaintiff has failed to state a claim upon which relief could be granted.  Thus, *ipso facto,* Plaintiff has also failed to show that he is likely to succeed on the merits of his claim.

This is another basis upon which denial of Plaintiff's request for injunctive relief is appropriate.  See *Heideman v. South Salt Lake City*, 348 F.3d 1182, 1189 (10th Cir. 2003) (to warrant injunctive relief, plaintiff bears the burden of showing that he is likely to succeed on the merits of his claim).

Accordingly, Plaintiff's Motion for Preliminary Injunction is denied.

## IV.  CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1.    Plaintiff's Motion for Preliminary Injunction (ECF No. 9) is DENIED;

2.    Defendants' Motion to Dismiss (ECF No. 28) is GRANTED;

3.    Plaintiff's claims brought under the United States Constitution are DISMISSED WITH PREJUDICE;

4.    The Court DECLINES JURISDICTION over Plaintiff's claims brought under the Colorado Constitution, and such claims are DISMISSED WITHOUT PREJUDICE; and

5.    The Clerk shall enter judgment and close the case.  Defendants shall have their costs.

Dated this 14th day of January, 2015.

BY THE COURT:

William J. Martinez
United States District Judge